Good morning, counsel. We will start today with the case of Fogle v. Sokol, and we'll hear first from Ms. Jones. Please support, counsel. Your Honors, I'm Marie Miley Jones, and I represent the defendant Olson, former district attorney, now retired judge in Indiana County, and the defendant Martin, former assistant district attorney, and now sitting judge in Indiana County as well as the county. I'd like to reserve two minutes for rebuttal. Thank you. Your Honors, we seek interlocutory review by this court using what we would characterize as the appropriate standards to judge the pleadings as they stood before the district court, and not let additional facts and conclusions reached by the trial court get in the way. Counsel, much of the brief is addressed to the conclusions, characterizations of the allegations of the complaint. We had alerted you to the Filler case from the First Circuit. To the extent that we are being asked to disagree with the characterizations of those allegations or sufficiency of the pleadings, is that something we even have jurisdiction over? I think you do, Your Honor. I think, first of all, this circuit has addressed in many prior cases interlocutory review at the motion to dismiss stage using what we're asking, which is the appropriate standards to judge the pleadings. This circuit has determined that factual allegations may be an issue on a matter, but that the legal standards looking at those allegations is the appropriate way to judge them. So we believe clearly that given the immunity issue, which is a clear legal defense, which is to be judged by what is pled about the actions of the prosecutors, is certainly appropriate for this court. And this court has looked at it in many other cases. So I don't think there's a need to look at the Filler decision or to be persuaded by it. I think there's some distinguishing facts there. It was a very egregious conduct, that issue. There was a finding of misconduct and ethical violations in the underlying matter. The pleadings were 100 plus pages. There were many more issues raised there in terms of disputes over facts. Our position isn't the fact was this way versus that way relative to the DA. Our position is there aren't any facts that support it. So we don't believe Filler applies and we believe this circuit's precedent in dealing with this issue on interlocutory review allows you to hear it. You agree we need to look at the face of the complaints to ascertain immunity. We're not we're not here judging the sufficiency of the pleadings. I agree. I absolutely agree. And we think the district court did not do that. We think the district court went well beyond what the pleading standards say. Look at a set of well pled facts. Look at the only allegations in the complaint. That's not what happened. I mean, you can find in that opinion of the district court, frankly, fiction about things that had nothing to do with the allegations. And so our position is, frankly, looking at the record and the timing of the initial order on our motion and the opinion issue, which the court may have noticed is nine months in difference that the order denying in part the motion came out and the opinion wasn't issued for nine more months. We believe that was sort of a process. I'll say the district court used in arriving at a decision. And it ended up having to create facts, add facts to get to that conclusion. So the process used by the district court obviously were attacking and believed it was inappropriate and and went so far as to not do what you just said the court should do. Just look at the allegations. And so that's all we're asking is do what the original standards required the district court to do and look at the immunity defense based only on the allegations. And getting to that specific point, if I may, then the the immunity defense, as you obviously know, is critical. It prevents parties from having to stand trial. And these are parties who request and appreciate that this court needs to do a meticulous review as the prior decisions of the circuit have acquired. These allegations really are quite interesting when it when it distinguishes between District Attorney Olson and Assistant District Attorney Martin. There are virtually no allegations at all against Assistant District Attorney Martin. No facts, no indications of any conduct he engaged in whatsoever. And when it comes to District Attorney Olson, there's just a couple. So our position is when we set forth in our brief that it's important to look at each of the actions at issue because, you know, the functions of the district attorney serve is what is to be assessed. The role they play as advocates is to be assessed. District Attorney Olson is mentioned in very few allegations. And again, Martin's virtually not even listed in the plea. And yet here he is in this case trying to say, why am I here? Why should I stand trial? As to Olson, as to the allegations, I think it's critical to look at each of the areas, the functions where they claim there was an appropriate behavior or conduct. And those go into the various standards that you'll have to judge this case by. I don't think we have disputes about the immunity standards, you know, prosecutorial function, advocacy role versus perhaps investigative, which is what appellees claim. You seem to have some dispute, if I'm reading the briefs correctly, about the burden of proof. You agree that it is the defendant's burden of proof to show entitlement to sovereign immunity. It's not the plaintiff's to prove that only qualified immunity. I do. I agree with that. But we again are asking this court to look at what that complaint says relative to the district attorneys only. And particularly District Attorney Olson, because, again, Martin is virtually not even mentioned ever. And when you look at that, when we look at what it says and let's look at the first sort of category that the hypnosis. Yes. You have you've argued that there's no allegations in the complaint that Olson took part in any action. That's right. But the complaint itself makes allegations that he arranged for it and that he was involved in reading the Miranda rights and he was involved in taking another statement. I think it's important to look at the whole section on that on that area. It lists four or five different activities that the police did, independent of District Attorney Olson, took one statement one year after the event, took a second statement four years after the event, took a third statement two days later. Also suggested and enlisted the hypnotist. That's all the state police. And then there's one paragraph, paragraph 54, that says the Pennsylvania State Police and the industry Olson arranged for the hypnotist at the local police station in Indiana Borough. And at that point, after that statement was provided as a group, it says Miranda is the defendant. I think it's interesting. The arrangement for a hypnotist at a local police station. That doesn't say Mr. Olson told them what to tell him, ask him a certain question, gave him advice how to do anything, gave him a statement, asked for a statement directly from him. Those are the kind of activities that the circuit and its decisions in the Supreme Court have said are concerning. Those are the kind of activities. None of that's here. If all he does is arrange for something at a local police station. Did or did not. And the allegations are that he that he did, although vague in their terms. Isn't that the material that's appropriate for qualified immunity, where there could be some discovery around the issues of qualified immunity? I think that might apply for the police. I think our positions clearly know it's not enough. Arranging for someone at a local police station, which interestingly, the district court then said, oh, it's a borough police station. So that has to be the county, which is almost fictional. But we don't believe that's enough. If that's all he's doing is arranging something that has nothing to do with merit substance. It has nothing to do with the advice, the questioning. So that to us is particularly it is vague, but it's it's immaterial. And if you look at the standards just for pleading standards, Iqbal Twombly, the Rule 12B6 standards, that would not be enough to justify a claim against that party. Why did you counsel? Why is it immaterial? I understand your argument regarding vagueness. Explain why it has no relevance at this stage. Because the sole word that relates to Olson is arranged this at a local police station. The sole phrase that has nothing to do with substance of corroborating or gathering evidence. This statement from Mr. Elderkin was taken three or four times already. I mean, at best, I would argue it's an evaluation of the circumstance of the statement or evaluation of what he looks like as a witness. It doesn't say he said one word. He could have been present in the facility. Why should he stand trial for that, for sitting in a police station while this happens? When all the other activities and there's a lot of allegations here about all the state police conduct, multiple, multiple paragraphs about specific acts of the state police. That sole little arrangement of the event at a local police station, even if he did it, because it's combined. So it's not even clear that he's solely responsible for that. Our position is that's just not enough. Don't you think discovery would flush that out? Well, it may or may not, but I don't think it needs to get to that point. Because we believe that because the standards say you just look at what's pled and you make the legal call that that's enough. And that's about the strongest argument they have, in my view, in our view, arranged for a police interview, arranged for the events to take place there. All of the other events, jailhouse informants, taking a confession, taking statements of these two young women that were at the scene, all of those. There's not one mention of Mr. Martin even having anything to do with it. And no mention that Mr. Olson was present, gave advice, gave statement questions, questions to ask, took the statements themselves. Most of that, if not all of it was post-charge anyway. Let's say the first instance with the hypnosis statement is susceptible to the reading that he not only arranged it, but participated in the interview by giving Miranda warnings and taking down the statement, asking questions in the course of the interview. If you accept those allegations, then given the timing here, that is, it's before probable cause, they're still narrowing in on any suspect, and that it's the kind of work that typically, at that stage in an investigation, is done by law enforcement officers, under our case law, wouldn't that be a matter of qualified rather than sovereign immunity? Your Honor, I'll respectfully disagree, because I don't even think that the use of the words participated in the interview. The words are not there. I get it that that's what the district court did, made those conclusions, that he generated a statement, participated in taking the statement. That's not what it says. It only says he arranged for it to take place in the local police station. After three or four different statements were already gathered, after the police enlisted the hypnotist, all of those things occurred first. So you're talking about circumstance where, at best, the evidence gathering was the traditional function of the police and done by the police. Whereas this is a perhaps evaluation, but even that isn't what it says. But that's more likely from sitting around arranging a meeting and a place for a meeting. It doesn't give the volume of allegations that relate to the police activity and attribute those to the district attorney. So, you know, we're trying to make sure that the pleading standards are appropriately used, and we don't believe the district court did. And we also believe they took great leaps and jumps in their conclusions. And that's seen in a number of issues, a couple of which we pointed out, including that borough police station location, including a half page footnote about whether THC was really PCP. I mean, just went beyond the realm of what the pleading itself said. Counsel, while your time is up, could you briefly address the issue of Dennis Vogel's confession? Yes. Again, if we read these allegations to say that Olsen participated in obtaining the statement. Well, given where this falls in the course of the investigation, it's after the complaint. But before preliminary hearing, it's taking a statement from a defendant under the case law. So what's your best argument that those actions would qualify for sovereign rather than qualified? Your Honor, the Dennis Vogel confession was obtained post filing of the criminal complaint, post probable cause affidavit being provided by a court after a proceeding before that court. And and does not include that Mr. Olsen was the initial interviewer. The police did an initial interview. So again, this isn't the gathering of evidence stage where I could appreciate the court's assessment that qualified immunity might be the better avenue to judge after additional facts. This is other activities have occurred. It's post charge, which all of the cases say is a distinction. And that it is also one that Olsen was not the initial or even primary person per the allegations in the complaint, which is a paragraph 72. And so all of this was, as the court has said in other cases, post charge, which is a critical time for which the courts have indicated the immunity for prosecutors does apply. So, Your Honor, we think, you know, I appreciate that that's that there are arguments to consider. But when the only allegations against both the district attorneys say that in a very conclusory way, they may have known or in the alternative, the police may have misled them and hid this from the court, Our view is that that demonstrates the lack of detail that is necessary to show the prosecutor's action. Rather, the focus of this is on the police action where the where the court's assessment about qualified immunity makes far more sense. We're just seeking a very clear and detailed review of those pleadings, particular to the actions of Olsen and Martin, and certainly with the appreciation that Martin's almost an afterthought here. But that takes us back to the beginning where we were talking about what what our jurisdiction is on interlocutory review. And I thought you agreed that the sufficiency of the pleadings was not an appropriate matter for us to review. We're looking at given the allegations that appear on their face, the nature of the conduct that's described, whether that would qualify for sovereign immunity. I do. And I guess I'm perhaps I'm being imprecise by saying to resolve in that question or that comment. But the point is, these allegations have to be taken in the whole context where all of this other police action occurs. Very specific as to Defendant Sokol, Defendant Steffy, Defendant Walt, very specific. Took this, did that, gathered the evidence, went out and did the police work. And one or two little words like arranged a meeting or were present for something should not be enough. Because the pleadings aren't as specific as to the prosecutors, they fail. I mean, if I'm following what you're saying, you're saying there's a there's a wealth of specificity as to the police officers, but there isn't as the prosecutor. So in comparison, that's the standard we should know. It's just that there's not there's nothing there to use to say immunity does not apply because most of these events, most of these events are after charges and in a state of the case where the courts have said immunity applies. There, the one that might be the closer call is the hypnotist. But you agree that if we're in equipoise, if we can't tell, given the pleadings, whether sovereign immunity applies or it doesn't, then as Judge Quinones was pointing out, that's where discovery could come in to ascertain whether it qualified for immunity or not. Except I believe that the limited amount of allegation coupled with the understanding that there was more specificity for other acts. Therefore, there's no acts here allows you to say that doesn't rise to the level of non-prosecutorial activity. So we'll get back to you. Thank you. One of your honors may please the court. Katie McCarthy, on behalf of plaintiff. Lewis James Fogle. This is an exceptional case, but it's defendants own arguments made clear. The issue before the court right now is straightforward. There's no dispute that Mr. Fogle is innocent or that he's pled allegations of investigatory misconduct, including fabrication of evidence, which would entitle him to relief. The only dispute the defendants have raised are over the facts that Mr. Fogle pled against them for their role in that investigation. And that alone answers the question of whether they can show right now that as a matter of law, they're entitled to absolute immunity on the pleadings. So I'd like to drill down in particular on the elder can interview, which, as Judge Krause, you intimated, there's no question under any articulation of the absolute immunity test that that that conduct is not entitled to absolute immunity. It is pre probable cause. There had never been anything linking Mr. Fogle, who we now know through DNA, is innocent to the crime before this statement. And the allegations in the complaint, as expressly pled, are that district attorney also not only arranged, but was present for and participated in directing this hypnotist, who was actually a high school English teacher, to use undue suggestion to elicit this statement from Mr. Elderkin, who they knew to be a wholly unreliable individual. He had been in a psychiatric ward. He believed he was from outer space. And contrary to Mr. Jones argument, the standard is not just the well-plaid facts. It's also all reasonable inferences from those facts. And there's no question that we're talking about district attorney Olson being present from day one with the police building this case. It's been a cold case for years now. He's in the room with the police officers and his English teacher who is allegedly hypnotizing Mr. Elderkin, who's a psychiatric patient, to fabricate this statement. And then they're trying to use this as the basis of probable cause. Let's talk about the other two statements. Dennis Fogle's confession. There it's we're after a probable cause finding the complaints been filed and affidavit and warrant issued. And while you argue that his alleged role is indistinguishable from that of the troopers, the troopers had spent many hours conducting their interview before the prosecutor was called to then take yet another statement. So that's not gathering of new evidence. That's a prosecutor coming to speak with a defendant. Having spoken with the officers for hours and hours, what on the basis of it would seem to be seeking a plea or assessing whether this could be a potential cooperator. And the complaint itself alleges that the purpose of that was to support their theory of the case. That suggests prosecutorial strategy rather than simply investigating when they're when they haven't yet honed in on a target. Well, respectfully, your honor, the allegations with respect to Dennis Fogle are that, yes, the police had conducted an interview on the day of his arrest on the day after the arrest. It's that District Attorney Olson is there again alongside the police officers conducting a custodial interrogation where they're eliciting a different statement. This is a statement that's more strongly tracking the statement by Elderkin that Olson was there during the fabrication of. So the allegations are that his conduct is exactly like the conduct he was engaging in with Elderkin, that there's the use of threats of coercive tactics and that they're feeding facts to Dennis Fogle to get him to give a new statement that tracks the statement that Elderkin had had given. And so this court, as well as the Supreme Court, has been clear that the probable cause line, the timing is not dispositive. So if the function that Olson is serving, which certainly, if not, if the court doesn't agree, is expressly pled is absolutely one reading of the allegations of fair inference from the allegations is the same as his role with Elderkin. Then, again, there's no entitlement to absolute immunity based on these facts. What do we do with the fact that the complaint says the purpose of participating in the interview is to support their theory of the case? That that seems like we are squarely in the realm of the role of prosecutors in developing a theory of a case and a strategy to support it. There's a distinction, Your Honor, between a prosecutor organizing or evaluating evidence or meeting with a witness in preparation for the grand jury where the prosecutor is going over what the witness is going to testify to. And maybe there's some hints being given. There's some back and forth. Here we're talking about a suspect who's under arrest, being custodially interrogated at the police station in order to obtain new evidence. This is the building of a case. And we think it's crucial here that Olson and Martin knew that there was no probable cause. The the entire basis for probable cause was Elderkin's statement, which was concocted. And the Supreme Court couldn't have been more clear in Buckley that a prosecutor neither is nor should consider himself to be an advocate before he has probable cause to arrest a suspect. So here Olson absolutely knows that there's no there's no basis. No person of reasonable caution could have believed that Elderkin's statement was a real connection between Mr. And so regardless, though, even if even if the court thinks that there is probable cause or that that's one reading of the complaint, Buckley is equally clear that the existence of probable cause is not dispositive. It doesn't immunize all conduct going forward. So really, the allegations here are that that Olson is engaging with the police in an indistinguishable role. He's there in the room using his coercive tactics to get this confession. And then when he's serving that function, he's not entitled to absolute immunity. We know from Burns v. Reed that it's the fact that a prosecutor is eliciting even false statements is not sufficient to defeat sovereign immunity. If the conduct in which they're engaged falls at a point in the proceedings where it's tied up with the role of the advocate with the judicial process itself. When we're here with a prosecutor, I'm not taking the first statement even, but a second statement from a defendant who has already been charged and probably the probable cause finding what why aren't we squarely in the realm of a judicial process where under Burns, the fact that, as you've highlighted, the allegations say that the testimony that he's eliciting is false still doesn't defeat sovereign immunity. Well, Your Honor, with respect to that, it's it's clear that if there's some question, right, these are fine distinctions. The Supreme Court in this circuit has acknowledged time and time again that these are fine lines. gray area in saying exactly when the prosecutor is acting as an advocate and when he's acting in an investigative function. And and even when these actions are occurring at the same time, for example, in Kalina, the Supreme Court is still parsing exactly what role the prosecutor is playing. And so here, if there is some question, which because this is such a fact specific inquiry, it's often difficult to dispose of that at the motion to dismiss stage. And that's why this court in Yaris, in Wilson, in Munchinski, in Kawiki, all those cases are at the motion to dismiss stage. And and the circuit has said every time if there's not a clear answer on the face of the complaint, then it proceeds to discovery. Is there relevance to the fact that the subject of the interview here is the charged defendant himself? No, your honor, we'd say that that if anything tends toward it being more police like activity, it is a traditional role of the police officer to interrogate a suspect to take to take a confession. And so to the extent that Olson is right alongside the police officers engaging that activity, if anything, that's a thumb on the scale for this being investigative conduct. Isn't that the contrast? Because while let's let's we can accept that that's typically something officers would do in terms of interrogating a suspect. But here is taking a statement from a charged defendant, a confession from the defendant himself. Isn't there a difference between the the evidence gathering and the the purpose on its face of a prosecutor taking a statement from the defendant? Your Honor, I think the Ninth Circuit in the Rubichov case dealt with this precise set of facts, which was soon after arrest, the prosecutor directing police officers to to take a statement from the suspect. And they said, you know, looking at that function, it's interrogative. That is it. That is a police like activity. Similarly, in the Moore case, the D.C. Circuit said when you're talking about what we've alleged here, which is coercing a statement, we've alleged that in this second interview there is there's a coercion of this statement from Mr. Fogle. That's a misuse of investigative techniques. This isn't geared towards a prosecutor figuring out what a suspect or witness might be saying. He's not weighing whether to give a deal to Mr. Fogle. The allegations here at this stage are that he used improper techniques alongside the police to take this custodial statement from Mr. Fogle. So that is the police function of collecting evidence or in this case, we'd say fabricating evidence. And that's not entitled to absolute immunity. But certainly if there's any question, then, you know, to take defendants at their word, applying the appropriate standard when there's a question, it proceeds to discovery for development of the facts. If the answer is not to say that, you know, because there's no reason to say there's not absolute immunity. Therefore, they have absolute immunity. It's, in fact, their burden to show they're entitled on the face of the complaint. And I think Yaris is particularly instructive in this respect. So in Yaris, one of the allegations was that the prosecutors had fabricated a confession from Mr. Yaris. And the court said there's only one. There's no information in the complaint about when this was done. There's no information about how it was done. In fact, there's one paragraph in the complaint that mentions Mr. Yaris potentially confessing to a prison guard. And yet the Third Circuit still said in that case, we don't have enough information at this point on those allegations, which could not have been more vague to say as a matter of law that there's an entitlement to absolute immunity. And so they allowed the case to proceed to discovery. And we would we would submit that that is absolutely true here. We have put forward numerous allegations about Defendant Olson and Defendant Martin's participation. It's not true that there are no facts whatsoever alleged against Martin. The complaint expressly pleads that Martin and Olson both were giving advice to. They were they knew and were encouraging the police to go out and fabricate statements from jailhouse informants. And we've also played Martin's role in this conspiracy. And it's absolutely a reasonable inference from the complaint, given that Martin and Olson are working together to prosecute this high profile case. They are the two prosecutors in this office. And the magnitude of this misconduct, the fact that Olson had done this fabrication with Alderkin, it absolutely we could prove in discovery a set of facts where Martin knew about that. And he's engaging in this conspiracy to fabricate evidence against Mr. Fogle. Why don't you address the jailhouse informants? Because by that point in the proceedings, there's also been a preliminary hearing with additional findings holding the defendants over. And before the third defendant, there's also the motion to suppress granted. Yes, Your Honor. So the allegations in the complaint are that they knew, encouraged or permitted the police to to take these fabricated statements from the jailhouse informants. And that is akin to in Burns giving legal advice to the police officers and the court, the Supreme Court. And this court is clear that we are looking at the function that the prosecutor was serving, not at the time, the timing of it. So we would say that that function is equivalent to Burns. It's not entitled to absolute immunity. And with respect to the timing in the Henderson v. Fisher case, this this court found that a prosecutor who knowingly failed to stop the removal of exculpatory evidence the day before trial was not entitled to absolute immunity. I think that the Gensler v. Longenbach case that we cite from the Ninth Circuit is particularly helpful here. In that case, we have both the prosecutor directing a post arrest interview by a police officer that the court found not entitled to absolute immunity and the prosecutor himself engaging in a post arrest post preliminary hearing where the allegations were that this evidence was fabricated from the witness. Gensler is certainly helpful, but that Ninth Circuit case is really an outlier among the others that say, regardless of whether there's there's knowledge of falsity or probable cause, we're looking at the nature of the of the prosecutor's conduct and how close it is under the functional approach that we've endorsed in odds. I believe the Ninth Circuit was applying that functional approach in Gensler. And certainly it's consistent with all the cases holding that if it's not clear what role the prosecutor is playing, there's no absolute immunity. I think that Justice Scalia put it well in his Buckley concurrence, which is that this acting as advocate test is sort of uniquely harder in theory than it is in practice, because if its application is not clear, then the defendant simply loses. And here, all of the defendants arguments have amounted to arguments on the facts. It's not true that the only allegations are that Olson arranged for the use of a hypnotist with elder can. And absolutely, as the district court in its well-reasoned and thorough opinion found, there are plenty of reasonable inferences to be drawn at this stage. The motion to dismiss state that these prosecutors were engaging in conduct that would not be entitled to absolute immunity. As to the jailhouse informants, there's no allegation that the that the prosecutors were actually participating in the interviews. No, Your Honor, there's there's no allegation that they were physically present. And we think, one, it's clear that if a police officer is conducting investigative work at the behest of a prosecutor, as in Burns, as in Guthrie in this court and and Gensler there, there's no question that the prosecutor is not entitled to a higher degree of protection for having directed the police officer to engage in conduct. That's entitled to only qualified immunity. What's the significance here of the pleading in the alternative around the jailhouse informants that they either knew of and approved it or they didn't know anything about it and they were misled? So, I mean, it's clear under federal civil procedure 80 that at the motion at this pleading stage, we can plead in the alternative and only need to be able to prove one set of facts that could entitle us to relief. So for purposes of this motion, the court should consider the pleadings about the prosecutors directing this activity. But moreover, at this stage, we necessarily have to plead to a certain degree based on inference. There's a huge difference. The defendants have all of the information. Right. They they know the internal communications that they have. They have the documents. There is very little discovery in this criminal case. So we have pled everything based on good faith and certainly for things that we know. There's no question, for example, that Olson's present for Elderkin, that he's present with Dennis Fogle. We have pled those. But there is a discrepancy in what information we've had access to. And that's why development and discovery is crucial here. When the alternative pleading is that these defendants were involved or alternatively, they weren't involved at all. Doesn't that say on the face of the complaint that the allegation itself is merely speculative? And what role should that play in our ascertaining sovereign immunity? Again, your honor, I think under the federal rules, it's clear it should play no role because we have put a set of facts. I would say that District Attorney Olson and Martin are not entitled to absolute immunity here. But moreover, I think there's inferences based on the timing of the taking of these statements that go to their knowledge and involvement. So the fact that the first two jailhouse informant statements are taken the same day as the preliminary hearing where it comes out that Elderkin had been hypnotized. Now, we purposely did not plead the actions of Olson and Martin when they're in front of the court at the preliminary hearing. We absolutely concede that those actions, false as they may be, are entitled to absolute immunity. But there's still a strong inference from the fact that they're trying to cover up their objecting to any line of questioning about the true circumstances of what went on with Elderkin, that they understand that they don't have a real basis for probable cause. And this is a weakness in the case. So in the same day, they go out and they get the two jailhouse informant statements. They tell the police, encourage the police to do this. And it's even stronger with Klingensmith, with the third jailhouse informant. So there, there's no doubt that the prosecutors the day before have received the court's decision suppressing Elderkin's statement and suppressing Dennis Fogel's confession. So now the case is crumbling. This fabricated basis for probable cause is gone. And there's no other evidence tying Mr. Fogel to this crime. For good reason, as we now know from DNA that he's innocent. But the next day, we have the police officers going to the jail, going out to obtain new evidence. They're seeking out a new informant. And per the allegations fabricating that Mr. Fogel had confessed to Ed Klingensmith. So given, given that, we absolutely had a good faith basis to plead that the prosecutors were involved as we plowed this whole conspiracy for fabricating evidence against Mr. Fogel. I mean, this really is an exceptional case. We're talking about, there's no dispute that he's innocent, but he spent 35 years in prison as a result of misconduct in this investigation. And Olson was there from day one. He was there with the police officers taking this man who thought he was from outer space, who'd given numerous conflicting statements and using an English teacher to hypnotize him. And they built a whole case off of that. And Mr. Fogel spent 35 years in prison as a result. A couple of points of information and response. Mr. Fogel was determined not to have been involved in the rape, which was the basis of a felony murder, just by background, to be clear, in relation to the basis of the underlying conviction being vacated. Mr. Olson being there from day one is inconsistent with the complaint in so far as there is no evidence that there was a detail about all the actions from day one of the police, not actions of District Attorney Olson, and certainly not actions of Assistant District Attorney Martin. The point of these two district attorneys being the sole two DAs in that county, and therefore they had to have known everything and worked together on every detail. These counties need people to cover an awful lot, and there was two people in the office. So making that inference, I think, is just inappropriate but unnecessary. I think you look at the complaint, you look at the allegations, and so it's clear there is no detail whatsoever about any conduct of Martin, and limited detail about Olson. And the court has seen, looking even at the Buckley decision, looking at the Yarris decision, that in assessing information gathered by police, in evaluating a witness, in even obtaining some statements once a witness is identified, immunity can still attach. And that's the best the allegation says, is that he was present, or in a room, or helped find a location, but not gathered the evidence, which is the part of the police function that is not attributed to the district attorneys. Well, in Yarris, we concluded that we couldn't ascertain exactly when the officers found the evidence, and that's not true. They participated in the investigation, whether there was probable cause or wasn't, when things happened. And so where there's that sort of ambiguity, then we held sovereign immunity is not appropriate, and it went back for more fact-finding for purposes of qualified immunity. On certain points, not on every point. In Yarris, the jailhouse statement informant, for example, was entitled to the immunity, because it was post-charge. But you're pointing us to the lack of detail, and saying that alone is a basis to conclude that sovereign immunity should attach. We're at the motion to dismiss stage, and given what's known before discovery, why, can you answer your colleague's point, why isn't what has been pleaded here sufficient to at least raise the question and warrant further discovery beyond a finding of sovereign immunity on the face of the pleadings? Because we think there is enough on the face of the pleadings. We think Yarris said specifically there were no allegations of those details of the District Attorney's Act relative to obtaining a false statement from a jailhouse informant, and it was after charge, which is the exact facts we believe, that Yarris at all or gave any instruction whatsoever. They're concluding that. They're making these inferences. And the alternative pleading point is a good one. There is one allegation that tries to group together all of this evidence, almost all of which was related to the conduct of the police, and say they knew or permitted, encouraged, or any alternative, they were misled. It's like throw it up in the air and see what happens. That shouldn't be enough when there's not the set of facts, like there are for the police activities, to show the level of detail. And I think the Yarris conclusion supports that. But when we're looking at the allegation that is made, that it does affirmatively call for a potential basis for defeating sovereign immunity, aren't we required to focus on that and set aside the dispute you have with the pleading? Well, no. I don't think you can set aside the dispute with the pleading in the sense that we think it's insufficient or it's scant allegations to support that conduct. It doesn't distinguish the function enough away from the activity of the prosecutor. You have to look at it in terms of the timing, the role they're playing, the evaluation, the effort to support the theory of the case, which the court so eloquently pointed out. Those are all things which we believe support assessing that now and not letting what would be a less than fulsome pleading as to the DA conduct survive for them to stand a trial, which they should not have to do. Appreciate it. Thank you very much. Our thanks to both counsel for their very helpful briefing and excellent argument. And we'll take the case under advisement.